**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUSEF STEELE, | CIVIL ACTION NO. 09-3551 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| WARDEN EDMOND CICCHI, et al., | |
| Defendants. | |

**COOPER, District Judge**

Before the Court are the Motions for Summary Judgment by the Defendants Warden Edmond Cicchi, Deputy Warden F. Masone, Internal Affairs Sgt. DeAmicis, and Capt. C. Barth (hereinafter "Defendants"). (Dkt. entry nos. 188, 189, 193, 195, Defs.' Mots. for Summ. J.)[1] The motions for summary judgment are granted in part and denied in part without prejudice.

## I.  FACTUAL BACKGROUND

According to the undisputed facts, Plaintiff, Yusef Steele, (hereinafter "Plaintiff") is currently a New Jersey state prisoner serving a twelve-year sentence for resisting arrest by flight (N.J.S.A. 2C:29-2A(2)) and for possession of a controlled dangerous

---

[1] Defendants collectively rely on the briefing submitted by the attorneys for Defendant Warden Edmond Cicchi. (Dkt. entry no. 189-1, Defs.' Br. in Supp. of Mot. for Summ. J.; see also Defs.' Mots. for Summ. J. (referencing dkt. entry no. 160, Barth's Notice of Mot.; dkt. entry no. 161, Masone's Notice of Mot.; dkt entry no. 162, DeAmicis's Notice of Mot.).)

substance within 500 feet of a public housing facility (N.J.S.A.
2C:35-5A, 2C:35-7.1). (Dkt. entry no. 189-2, Miller Certif., Ex.
B, Pl.'s J. of Conviction; id., Ex. C, Pl.'s Dep. Tr. at 16.)

At the time of the events in question, Plaintiff was a
pretrial detainee at the Middlesex County Adult Correction Center
(hereinafter "MCACC") following his December 22, 2008 arrest for a
violation of a narcotics restraining order. (Pl.'s Dep. Tr. at 25;
Miller Certif., Ex. D, Warrant for Pl.'s Arrest.) On December 23,
2008, Plaintiff's bail was set at $50,000. (Pl.'s Dep. Tr. at 29.)
Plaintiff did not initially attempt to "get bailed out." (Id. at
30.) During his stay at MCACC, Plaintiff served as a trustee.
(Id. at 119, 123.) Plaintiff testified that his duties as a
trustee included, inter alia, collecting laundry, serving meals,
and painting the units when needed. (Id. at 44.)

Plaintiff's position as trustee also allowed him to arrange
bail for other inmates. (Id. at 41.) Because Plaintiff admittedly
got "locked up a lot," he had developed a "bond" or "relationship"
with Speedy Bail Bonds (hereinafter "Speedy") and Speedy's owner
Jose Vargas. (Id. at 40-41.) Speedy had posted bail for Plaintiff
in the past, and Plaintiff testified that he had developed a
payment plan with Speedy to pay back the prior bail money. (Id. at
40-41.)

On February 23, 2009, Robert Gluck (hereinafter "Gluck"), an attorney representing another pretrial detainee Patrick Betterton (hereinafter "Betterton") at the MCACC, contacted Deputy Warden Masone.  (Miller Certif., Ex. E., Gluck Certif. at ¶¶ 1-2.) Betterton had been charged with endangering the welfare of children, and his bail was set at $250,000.  (Id. at ¶ 4.)  Gluck informed Deputy Warden Masone that he was concerned for Betterton's safety because Plaintiff had approached Betterton and threatened to disclose the nature of his charges to other inmates if Betterton did not use Speedy to post bail.  (Id. at ¶¶ 2, 5, 6; see also Miller Certif., Ex. G, DeAmicis Aff. at ¶ 4.)  "Child sex offenders are among the most hated members of an inmate population," so Defendant DeAmicis believed that Gluck's concern for Betterton's safety was justified.  (DeAmicis Aff. at ¶ 6.)  Gluck indicated that Plaintiff had shown Betterton a document listing Betterton's charges and bail amount.  (Id. at ¶ 5; Gluck Certif. at ¶ 2.)

Following the receipt of this information, Defendants initiated an investigation into the activities of Speedy and Plaintiff at the MCACC.  (DeAmicis Aff. at ¶ 8.)  Defendants interviewed Betterton, who provided them with a phone number that Plaintiff had given him to call to arrange bail, and Defendants discovered that this phone number belonged to Speedy.  (Id. at ¶¶ 10-11.)  Defendant DeAmicis reviewed recorded phone calls from the

N-unit, the intake unit in which Plaintiff and Betterton were housed, and found that there were numerous conversations between Speedy personnel and Plaintiff in which Plaintiff referenced inmates and their bail amounts. (Id. at ¶ 12.) In the calls, Plaintiff referred to his ability to get other inmates to use Speedy to post bail and the credit he expected to receive from Speedy for the recruited bails. (Id. at ¶ 13.) Defendants believed, on the basis of the foregoing, that Plaintiff was acting as an agent for Speedy and was receiving some form of compensation. (Id. at ¶ 14.)

Deputy Warden Masone contacted Speedy on February 23, 2009 and arranged for a meeting with Speedy at the MCACC on February 25, 2009. (Id. at ¶ 15.) Plaintiff testified that prior to Defendants' meeting with Speedy, Speedy representatives had informed him that they had been called in to meet with MCACC administrators. (Pl.'s Dep. Tr. at 56-57.)

On February 25, 2009, Defendants Masone, DeAmicis, and Cicchi interviewed Plaintiff. (DeAmicis Aff. at ¶ 16.) Plaintiff admitted to arranging bail for other inmates, but he denied receiving any compensation from Speedy. (Id.) Instead, he claimed that he was doing so "out of the goodness of [his] heart." (Id.; Pl.'s Dep. Tr. at 121.) During Plaintiff's interview, corrections officers searched his cell in the N-unit and discovered lists of

inmates, their bail amounts, and phone numbers of their friends and relatives.  (DeAmicis Aff. at ¶ 17.)

Based on this information, Defendants placed Plaintiff in administrative segregation in the C-pod "to prevent him from imposing any additional security risks in the facility and to allow further investigation into Speedy's activities without his interference."  (Id. at ¶ 18.)  On February 26, 2009, Joyce Pirre, Chief of Social Services, wrote to Plaintiff stating, "The Classification Committee has reviewed your Housing Status.  You were placed in Administrative Segregation.  The Classification Committee will review your Status on a monthly basis."  (Dkt. entry no. 197-1, Pl.'s Br. in Opp'n, Ex. E, 2-26-09 Letter from J. Pirre.)  Plaintiff remained in the C-pod until March 20, 2009 when he was released on bail.  (DeAmicis Aff. at ¶ 23.)

Plaintiff alleges that, because of restrictions on his ability to use the phone while in administrative segregation, he was unable to post bail on March 6, 2009 after his bail had been reduced to $2,500.  (Dkt. entry no. 197, Pl.'s Br. in Opp'n at 1, 5; see also dkt. entry no. 109, Am. Compl. at ¶¶ 49, 50, 63-65.)  Defendants did not address this allegation and generally denied Plaintiff's factual allegations.  (See dkt. entry no. 110, Masone Answer at ¶¶ 49, 50, 63-65; dkt. entry no. 112, Cicchi Answer at ¶¶ 49, 50, 63-65; dkt. entry no. 113, Barth Answer at 2 (general denial of ¶¶ 16-

72 of Am. Compl.); dkt. entry no. 114, DeAmicis Answer at 4
(general denial of ¶¶ 16-72 of Am. Compl.); dkt. entry no. 198,
Cicchi Letter Reply Br.; dkt. entry no. 199, Masone Letter Reply
Br.; dkt. entry no. 200, DeAmicis Letter Reply Br.; dkt. entry no.
201, Barth Letter Reply Br.)  Plaintiff also alleges that
Defendants attempted to coerce him into making a false statement
against Speedy -- specifically that Speedy was paying him -- by
promising Plaintiff that he would be released from administrative
segregation if he did.  (Am. Compl. at ¶¶ 58-59.)  He asserts that
he refused to make such a statement.  (Id. at ¶ 60.)  Defendants
again did not address this allegation and generally denied
Plaintiff's factual allegations.  (See Masone Answer at ¶¶ 58-60;
Cicchi Answer at ¶¶ 58-60; Barth Answer at 2 (general denial of ¶¶
16-72 of Am. Compl.); DeAmicis Answer at 4 (general denial of ¶¶
16-72 of Am. Compl.).)

Speedy representatives in a subsequent interview with
Defendants asserted that Plaintiff was an "associate" of theirs and
that they permitted him to make three-way calls through their
office in exchange for Plaintiff recruiting other inmates to use
Speedy to post bail.  (Id. at ¶ 20.)  They denied compensating
Plaintiff.  (Id.)  Defendants informed Speedy representatives that
Speedy could no longer write bails for MCACC inmates pending
further investigation.  (Id. at ¶ 22.)  The investigation

continued, and eventually, the administration contacted "the
Middlesex County Prosecutor's Office and the New Jersey Department
of Banking and Insurance regarding Speedy's illegal Activities."
(Id.)

## II.  PROCEDURAL HISTORY

Plaintiff initially filed a complaint in the United States
District Court for the District of New Jersey on July 17, 2009.
(See dkt. entry no. 1.)  His complaint was dismissed on July 21,
2009 when the Court denied his application to proceed in forma
pauperis.  (See dkt. entry no. 2, 7-21-09 Order.)  The case was
reopened on April 30, 2010 following Plaintiff's submission of a
completed application to proceed in forma pauperis.  (See dkt.
entry no. 7, 4-30-10 Order.)

Following several discovery motions and motions to amend the
complaint, the Court granted Plaintiff's motion to amend the
complaint on May 10, 2012, and Plaintiff filed the amended
complaint (hereinafter "Complaint") that is currently at issue.
(See dkt. entry no. 108, 5-10-12 Order; dkt. entry no. 109, Am.
Compl.)

The Complaint asserts several causes of action under 42 U.S.C.
§ 1983:

> (1)  That Defendants violated the Fourteenth Amendment of the
> United States Constitution by placing him in
> administrative segregation without any showing of
> wrongdoing as required by New Jersey Department of

7

Corrections regulations and the Middlesex County
Department of Corrections Handbook (Am. Compl. at ¶ 10);

(2)    That Defendants violated the Eighth and Fourteenth
       Amendments of the United States Constitution by failing
       to release him from administrative segregation knowing
       that his segregation was not justified (id. at ¶ 11);

(3)    That Defendants wrongfully attempted to coerce Plaintiff
       to give a false statement against Speedy by promising to
       release him from administrative segregation if he gave
       such statement in violation of the Fourteenth Amendment
       of the United States Constitution (id. at ¶¶ 12, 13);

(4)    That Defendants wrongfully and without justification
       deprived Plaintiff, a pretrial detainee, of the
       privilege of using the phone to post bail in violation
       of the Fourteenth Amendment of the United States
       Constitution (id. at ¶ 14); and

(5)    That Defendants intentionally withheld material
       information from Plaintiff to conceal their actions in
       violation of the First and Fourteenth Amendments of the
       United States Constitution (id. at ¶ 15.)

Each individual Defendant submitted an Answer to the Complaint.

(See dkt. entry nos. 110-14, Defs.' Answers.)

Following several discovery motions and motions for summary

judgment that were denied without prejudice based on discovery

issues, the Court ordered that discovery was closed on June 13,

2013.  (See dkt. entry no. 184, 6-13-13 Order.)  Defendants then

moved for summary judgment.  (See Defs.' Mots. for Summ. J.)

### III.  SUMMARY JUDGMENT STANDARD

The standard for a motion for summary judgment is well-

established.  Rule 56 provides that summary judgment is proper if

there is no genuine dispute as to any material fact and the movant

8

is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

"[A] party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for

its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal

quotation marks omitted).  Summary judgment is "proper if, viewing

the record in the light most favorable to the non-moving party and

drawing all inferences in that party's favor, there is no genuine

issue of material fact and the moving party is entitled to judgment

as a matter of law." United States ex rel. Kosenske v. Carlisle

HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009).

## IV.  PARTIES' ARGUMENTS

### A.  Defendants' Arguments

Defendants initially argue that "Plaintiff's pleadings are

insufficiently specific and provide inadequate notice to the

Defendants as to the nature of the claims they must defend."

(Defs.' Br. in Supp. of Mot. for Summ. J. at 13.)

To the extent that Plaintiff asserts that his due-process

rights were violated by being placed in administrative segregation

without a documented reason or a hearing, Defendants assert that

9

"[i]nmates retain no liberty interest in remaining in the general population" and that prison administrators have discretion to transfer inmates to "'more restrictive quarters for nonpunitive reasons.'" (Id. at 15 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).) With respect to pretrial detainees, the existence of a due-process violation turns on whether the restraints imposed amount to punishment prior to the adjudication of guilt. (Id. at 16 (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).) Restraints that are related to administrators' interest in maintaining security do not amount to unconstitutional punishment. (Id.) Defendants assert that courts in this Circuit and in other circuits have approved the use of administrative segregation during institutional investigations, including for pretrial detainees. (Id. at 17 (citing cases involving inmates and pretrial detainees in prisons outside of New Jersey).)

Defendants argue that there is no dispute of material fact "as to whether Plaintiff's placement in administrative segregation at the MCACC exceeded the purpose of ensuring security for which it was intended." (Id. at 19.) Administrators were justifiably concerned about the safety of other inmates based on Plaintiff's extortion of inmates to use Speedy to post bail, and administrators needed to conduct an investigation into Speedy's illegal activities without Plaintiff's interference. (Id. at 19-20.) Plaintiff

10

admittedly received notice of his change in status, and his
segregation was not unduly lengthy because he bailed out of the
MCACC less than a month after being placed in segregation before
his placement could be reviewed by the Classification Committee.
(Id. at 20.)

As to Plaintiff's invocation of the Eighth Amendment, the
Cruel and Unusual Punishment Clause of the United States
Constitution, Defendants argue that, as a pretrial detainee,
Plaintiff was not eligible for Eighth Amendment protections.  (Id.
at 21 (citing Graham v. Conner, 490 U.S. 386, 392 (1989).)  Rather,
a conditions-of-confinement claim by a pretrial detainee is
measured based on whether the restraints amount to punishment prior
to adjudication of guilt, and here, Plaintiff's segregation was not
punitive.  (Id.)  Defendants similarly assert that "[t]here is
nothing in Plaintiff's Complaint to suggest that his claim has
anything to do with the protections contained in [the First]
Amendment."  (Id. at 13 n.2.)

Defendants' final argument is that they are protected by
qualified immunity because their actions were objectively
reasonable "[g]iven the wide latitude to which corrections
officials are entitled in this context."  (Id. at 23-25.)

**B.    Plaintiff's Arguments**

Plaintiff argues that the MCACC has a handbook of inmate guidelines that reference the New Jersey Administrative Code, specifically N.J.A.C. 10A:4 Inmate Discipline, and N.J.A.C. 10A:5 Close Custody Units.  (Pl.'s Br. in Opp'n at 6.)  He argues that these guidelines provide procedures to be followed in the administration of inmate discipline.  (Id. at 7.)  Decisions from the Court of Appeals for the Third Circuit establish that a constitutionally cognizable liberty interest can arise from state rules and regulations when they establish substantive predicates that must be met in order for an inmate to be placed in restrictive custody.  (Id. (citing Layton v. Beyer, 953 F.2d 839 (3d Cir. 1992)).)  Plaintiff asserts that the New Jersey Department of Corrections regulations N.J.A.C. 10A:4 and N.J.A.C. 10A:5 have mandatory language that creates such substantive predicates that must be met.  (Id. at 8, 15.)  Plaintiff alleges that Defendants failed to follow these predicates because they did not prepare a disciplinary report with a finding of guilt, which would have provided Plaintiff with notice of the reason for his placement in administrative segregation.  (Id. at 9-15, 22-23, 26-28.)  Plaintiff claims that, as a prisoner, he has the right to written notice of the basis of his removal from the general population and

an opportunity to rebut the charges or a hearing; however, he was never provided with a written record. (Id. at 16, 30.)

Plaintiff further argues that pretrial detainees are presumed innocent and may not be subjected to punishment. (Id. at 17 (citing Bell, 441 U.S. at 535).) He contends that New Jersey case law establishes that administrative segregation is the same as disciplinary confinement. (Id. at 24 (citing Perez v. Neubert, 611 F.Supp. 830, 837 (D.N.J. 1985)).)[2] He argues that, as a pretrial detainee, his placement in administrative segregation without an adjudication of guilt was a punishment and that he was kept in custody longer than necessary because he was unable to post bail on March 6, 2009 after his bail was reduced. (Id. at 31.) As a result of the foregoing, Plaintiff contends that Defendants are not entitled to qualified immunity because they placed a pretrial detainee in administrative segregation without abiding by the applicable rules and regulations. (Id. at 34-36.)

Plaintiff additionally argues that Defendants' assertion that the purpose of his administrative segregation was security is a

---

[2] The Court does not read this case to suggest that administrative segregation is the same as disciplinary confinement. Rather, the Perez court explained that the case law has confused the nomenclature. 611 F.Supp. at 837 n.4. The court assumed the conditions of confinement are the same for both administrative segregation and disciplinary segregation. Id. at 837. However, the court noted that while the purpose of disciplinary segregation is punitive, the purpose of administrative segregation is nonpunitive and is instead imposed for security reasons. Id.

farce because Betterton posted bail prior to February 23, 2009, and therefore, security was not the true concern when Defendants placed Plaintiff in administrative segregation on February 25, 2009. (Id. at 18-21 (citing dkt. entry no. 197-3, Pl.'s Br. in Opp'n, Ex. Q, Pl.'s Decl.).) Furthermore, Plaintiff asserts that neither Betterton nor any other inmates were placed in "keep separate status" from Plaintiff. (Id. at 20-21.)

With respect to his First Amendment claims, Plaintiff argues that his placement in administrative segregation violated his freedom-of-association rights to interact with other inmates as a trustee and help them post bail. (Id. at 32-33.)

Plaintiff concludes that material facts are in dispute. In particular, during discovery Plaintiff had requested the N-unit log book for February of 2009, which would have provided Betterton's bail dates and an accounting of any incidents between Plaintiff and Betterton. (Id. at 39-40, 44-45.) Plaintiff also claims to have requested information from Defendants regarding what was heard in the recorded phone calls they reviewed. (Id. at 40.) Plaintiff asserts that this information is essential to his ability to

challenge Defendants' assertions that the purpose of the segregation was related to security concerns.  (Id. at 41.)[3]

## C.    Defendants' Reply

Defendants respond that Plaintiff's counter statement of material facts should not be considered because he failed to cite to the record in support of these facts and that Plaintiff's brief exceeds the 40 page limitation found in New Jersey Local Civil Rule 7.2.  (See Cicchi Letter Reply Br.; DeAmicis Letter Reply Br.; Barth Letter Reply Br.)

With respect to Plaintiff's legal arguments, Defendants contest Plaintiff's assertions that Defendants failed to abide by New Jersey regulations and argue that Plaintiff cites the wrong regulations.  (Cicchi Letter Reply Br. at 3.)[4]  Specifically, under N.J.A.C. 10A:1-2.1, N.J.A.C. 10A:1 through 10A:30 -- the regulations cited to by Plaintiff -- explicitly apply only to State

---

[3] The Court notes that Plaintiff's entitlement to discovery relating to Betterton has been addressed numerous times by the Magistrate Judge.  Most recently, the Magistrate Judge stated, "The Court finds that Plaintiff is not entitled to any additional information regarding Mr. Betterton.  This Court has already found Defendants' production to be adequate as outlined in Defendants' responses and Plaintiff has not shown that he is entitled to more information, or that such information would be likely to lead to relevant evidence."  (6-13-13 Order.)  Discovery in this case closed on June 13, 2013.  (Id.)

[4] Defendants Barth, DeAmicis, and Masone join the legal arguments contained in Defendant Cicchi's Letter Reply Brief.  (See Masone Letter Reply Br.; DeAmicis Letter Reply Br.; Barth Letter Reply Br.)

correctional facilities; N.J.A.C. 10A:31 through 10A:34 are the regulations that apply to municipal and county correctional facilities. (Id.) MCACC is a county facility, so Plaintiff's citations to N.J.A.C. 10A:1 through 10A:30 are irrelevant. (Id.) Moreover, Defendants argue that Plaintiff did in fact receive notice from Chief of Social Services Joyce Pirre that his status was changed by the Classification Committee to administrative segregation, and Plaintiff posted bail prior to the monthly review scheduled by the Committee. (Id.)

Defendants concede that States, through statutes and regulations, can create liberty interests that may be protected by the Due Process Clause. (Id. at 4.) However, "'these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).) Under Third Circuit precedent, administrative segregation, even for fifteen months, does not impose such a hardship. (Id. (citing Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997)).)

With respect to Plaintiff's assertion that he has not received adequate discovery regarding Betterton, Defendants argue that the Magistrate Judge has already ruled that Plaintiff is not entitled to more discovery. (Id. at 4-5 (citing 6-13-13 Order).)

16

**D.   Plaintiff's "Sur-Reply"**

In response to Defendants' reply briefing, Plaintiff submitted what he refers to as a "Supplemental & Amended Brief in Support of Opposition." (See dkt. entry no. 202, Pl.'s Supplemental Br.) Defendants argue that the Court should not consider this brief because it is actually a sur-reply, and Plaintiff did not obtain permission from the Court to file such a brief as is required by Local Civil Rule 7.1(d)(6). (Dkt. entry no. 203, Barth's 10-22-13 Letter; dkt. entry no. 204, Cicchi's 10-23-13 Letter.) The Court need not resolve the propriety of Plaintiff's filing, as it does not alter the Court's result. The Court will briefly summarize the contents of this filing to the extent that such arguments were not presented in Plaintiff's original brief.

Plaintiff provided factual citations for his counter statement of material facts in response to Defendants' reply briefing. (Pl.'s Supplemental Br. at 1-2.) Plaintiff also responds to Defendants' argument that he relies on the wrong regulations and argues that, according to the MCACC's Handbook, N.J.A.C. 10A:4 and 10A:5 apply to inmates at the MCACC. (Id. at 3-4.) He concedes that the regulations dictate that N.J.A.C. 10A:31 through 10A:34 apply to county facilities, but he counters that "there is no statement or citation in the [MCACC] inmate handbook showing it applies[.] [T]he only administrative code is 10A:4 and 10A:5."

(Id. at 4.)  Plaintiff additionally argues that the "atypical and significant hardship standard" from Sandin applies to sentenced inmates, not pretrial detainees.  (Id. at 8.)

## V.    ANALYSIS

Plaintiff in this matter is unrepresented by counsel.  For this reason, the Court holds his Complaint "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).

Despite of the Court's liberal view of Plaintiff's submissions, this leniency can only go so far.  While Plaintiff has asserted claims for violations of his First and Eighth Amendment rights, nothing in the submissions suggests that his claims have anything to do with the freedoms protected by these Amendments. The Complaint and submissions are entirely directed at Defendants' failure to provide him due process when placing him in administrative segregation.  For this reason, the Court will grant the motions for summary judgment in part as they apply to Plaintiff's claims for First and Eighth Amendment violations.  (See Am. Compl. at ¶¶ 11, 15.)

The Court finds that Defendants have failed to carry their burden of demonstrating their entitlement to summary judgment with respect to Plaintiff's due-process claims.  The Fourteenth Amendment Due Process Clause does not in and of itself create a

18

liberty interest in an inmate remaining part of the general prison population as opposed to being confined to "less amenable and more restrictive quarters for nonpunitive reasons." Hewitt, 459 U.S. at 466-68. Nevertheless, "[s]tate regulations having the force of law, as well as state statutes, may create a liberty interest." Layton, 953 F.2d at 845. The Third Circuit has found that the very regulations cited by Plaintiff, specifically N.J.A.C. 10A-5.25, "create[s] a liberty interest in remaining part of the general prison population, or, more particularly, remaining free of the restrictive confinement" of administrative segregation. Id. at 846-47. However, shortly after the Third Circuit's recognition of this liberty interest, the Supreme Court clarified the standard for finding a liberty interest based on a state statute or regulation. In order for a due-process violation to arise based on a state-created liberty interest, the restraint must "impose[] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Plaintiff correctly notes that Sandin applies to sentenced prisoners, not pretrial detainees. See id. With respect to the constitutionality of restraints on pretrial detainees' liberty interests without due process of law, "the proper inquiry is whether those conditions amount to punishment of the detainee" or whether the restrictions are incidental to "some other legitimate

19

government purpose." Bell, 441 U.S. at 535, 538. This standard
balances the rights of detainees with the need of prison
administrators to maintain security and with the wide-ranging
deference courts afford to prison administrators. Id. at 546-47.
Sandin affirmed that the punitive standard articulated in Bell
remains the law with respect to pretrial detainees, and stated that
"[t]he punishment of incarcerated prisoners, on the other hand,
serves different aims than those found invalid" with respect to
pretrial detainees. Sandin, 515 U.S. at 484, 485.

The circumstances in Bell are distinguishable from the facts
of this case. Bell did not involve state regulations that created
liberty interests. Here, there admittedly exists a regulatory
scheme that provides rules and procedures for administrative
confinement. Moreover, the rationale for the creation of the
punitive standard in Bell does not appear to be implicated in this
case. The concern in Bell, as explained by Sandin, was that "a
State would attempt to punish a detainee for the crime for which he
was indicted via preconviction holding conditions." Id. at 484
(citing Bell, 441 U.S. at 539). But here, Plaintiff does not
argue, and the undisputed facts do not suggest, that the purpose of
the administrative segregation was to punish Plaintiff for his
indicted crimes -- resisting arrest by flight (N.J.S.A. 2C:29-
2A(2)) and possession of a controlled dangerous substance within

500 feet of a public housing facility (N.J.S.A. 2C:35-5A, 2C:35-7.1). Plaintiff has failed to acknowledge these differences from the circumstances in Bell.

This does not mean, however, that Defendants have successfully framed the issue. Even if the Court were to assume that Bell is inapplicable given these distinctions and that Sandin governs, Defendants have not addressed Plaintiff's allegation that he was unable to post bail on March 6, 2009 because he was could not freely use the phone while in administrative segregation. This fact might have significance under Sandin. In determining that the restraint in Sandin was not an atypical and significant hardship, the United States Supreme Court noted that the restraint upon the inmate did not "inevitably affect the duration of his sentence." Sandin, 515 U.S. at 487. Here, Plaintiff had not been sentenced at the time of his administrative segregation, but he alleges that the segregation prevented him from posting bail several weeks earlier. Defendants have not addressed this allegation in their submissions. Thus, while the parties have correctly identified the standards from Bell or Sandin, they have not adequately framed the issue or briefed their positions with recognition of the particular facts at issue here.

The parties have additionally failed to adequately address what, if any, state-created liberty interests exist in this case.

Defendants accurately state that the regulations explicitly provide that N.J.A.C. 10A:4 and 10A:5 -- the regulations found to create a liberty interest in <u>Layton</u> and the regulations relied upon by Plaintiff as the basis of his due-process rights -- apply only to state facilities.  N.J.A.C. 10A:2-1.  MCACC is a county facility.  Thus, these regulations, and any liberty interest created by them, do not, without more, apply to the MCACC.  <u>See</u> <u>Selobyt v. Keough-Dwyer Corr. Facility of Sussex Cnty.</u>, 375 N.J. Super. 91, 98 (App. Div. 2005) ("[T]here are differences between the [Department of Corrections] rules for county correctional facilities and those that pertain to state correctional facilities.").

Plaintiff has argued in response that the MCACC's Handbook applies these regulations to inmates in the MCACC.  Plaintiff has provided excerpts from this Handbook to the Court.  While Plaintiff truthfully cites from these excerpts, the Court cannot rule on the precise contours of any due-process rights created by the Handbook without viewing the Handbook in its entirety.  For example, it is unclear from the excerpts whether the citations to N.J.A.C. 10A:4 and 10A:5 in the excerpts are merely an effort by prisoner administrators to make the Department of Corrections regulations generally available to inmates, or whether they are intended to extend the application of the regulations for state facilities to the MCACC as well.  Moreover, while Defendants argue that the

regulations applicable to a county institution such as the MCACC are N.J.A.C. 10A:31 through 10A:34, Defendants have failed to brief what, if any, state-created liberty interests arise from these regulations or from the MCACC's Handbook, specifically with respect to a pretrial detainee rather than a sentenced inmate.

The briefing by the parties is deficient. Should the parties desire to refine their briefing based on the foregoing, the Court will entertain another motion for summary judgment.[5]

## VI. CONCLUSION

For the reasons stated, and for good cause showing, the Court will (1) grant the motion for summary judgment with respect to the First Amendment and Eighth Amendment claims and (2) deny the motion for summary judgment without prejudice with respect to Plaintiff's claims under the Due Process Clause of the Fourteenth Amendment. The Court will issue an appropriate order and judgment.

____s/ Mary L. Cooper____
**MARY L. COOPER**
United States District Judge

Dated: December 9, 2013

_____

[5] The Court is not persuaded by Plaintiff's attempts to create a disputed issue of fact with respect to his lack of discovery related to Betterton. The Magistrate Judge has addressed these concerns. (See 6-13-13 Order.) Discovery is closed, and Plaintiff is not entitled to additional information on Betterton. (Id.)