NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUSEF STEELE,<br><br>   Plaintiff,<br><br>   v.<br><br>WARDEN EDMOND CICCHI, et al.,<br><br>   Defendants. | CIVIL ACTION NO. 09-3551 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER**, **District Judge**

Before the Court are the Motions for Summary Judgment by the Defendants Warden Edmond Cicchi, Deputy Warden F. Masone, Internal Affairs Sgt. DeAmicis, and Capt. C. Barth (hereinafter "Defendants"). (Dkt. entry nos. 208, 209, 210, 212, Defs.' Mots. for Summ. J.)[1] The motions for summary judgment will be granted.

## I.   BACKGROUND

The facts and procedural history are detailed in the Court's Memorandum Opinion dated December 9, 2013. (Dkt. entry no. 205, 12-9-13 Op.) On that date, the Court denied, in part, Defendants' motions for summary judgment and indicated that Defendants could move anew for summary judgment if they adequately briefed the following issues: (1) the truth and significance of Plaintiff Yusef Steele's ("Plaintiff") contention that the restrictions on his

---

[1] Defendants collectively rely on the briefing submitted by the attorneys for Defendant Warden Edmond Cicchi. (Dkt. entry no. 208-5, Defs.' Br. in Supp. of Mot. for Summ. J.; see also Defs.' Mots. for Summ. J.)

ability to use the telephone prevented him from posting bail at an earlier date; and (2) what, if any, state-created liberty interests arise from the Middlesex County Adult Correction Center ("MCACC") Handbook.  (See 12-9-13 Op. at 21-23.)

Defendants have moved anew and have provided the Court with additional, pertinent facts for the purposes of these motions.  Defendants submitted excerpts from Plaintiff's deposition transcript in which Plaintiff testified that he was able to contact his lawyer while in administrative segregation after his bail was reduced by means of three-way calls facilitated by his social worker.  (Dkt. entry no. 208-2, Miller Certif., Ex. C, Pl.'s Dep. at 131-32.)  Plaintiff wanted to contact his friend "Jimmy" but was unable to do so, not because Defendants denied him use of the phone but because Jimmy "doesn't accept phone numbers that he doesn't know," so "it was useless" for Plaintiff to give his lawyer Jimmy's phone number.  (Id. at 131-32.)  Defendants also submitted the entirety of the MCACC Handbook.  (Id. at Ex. O, MCACC Handbook.)  While the MCACC Handbook does in fact include N.J.A.C. 10A:4 and 10A:5, the regulations explicitly limited the application of these provisions to "every State-sentenced inmate under jurisdiction of the Division of Operations of the New Jersey Department of Corrections regardless of sentence."  (Id. at 18.)  But Plaintiff had not been sentenced at the time of the events in question.

Plaintiff did not submit any response to these factual references or to Defendants' renewed motions at all.  The Court will nonetheless consider the merits.

## II.     ANALYSIS

The central issue for Plaintiff's due-process claims is whether "the conditions of his pretrial confinement constituted 'punishment.'"  Southerland v. Cnty. of Hudson, 523 Fed.Appx. 919, 921 (3d Cir. 2013).  "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, such as ensuring security and order at the institution, it does not, without more, amount to punishment."  Id.  This "determination may be properly made on a motion for summary judgment."  Stevenson v. Carroll, 495 F.3d 62, 71 (3d Cir. 2007).

With respect to substantive due-process claims of pretrial detainees, affidavits from prison officials "will often be adequate to resolve the punishment inquiry."  Id. at 69.  "[A] showing by prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry."  Id.  Here, the undisputed facts show that Defendants had received a complaint that Plaintiff was threatening other detainees to use Speedy Bail Bonds ("Speedy") to post bail.  Defendants investigated these allegations by searching Plaintiff's cell, interviewing Plaintiff, interviewing Speedy representatives, and reviewing recorded phone calls between Speedy and Plaintiff.  Their investigation corroborated the allegations of the complaint.  According to the affidavit of Internal Affairs Sgt. DeAmicis, Defendants then placed Plaintiff in administrative segregation "to prevent him from imposing any additional security risks in the facility and to allow further investigation into Speedy's activities without his interference."  (Miller Certif., Ex. E, DeAmicis Aff. at ¶ 18.)  The Court finds that the

3

undisputed circumstances of this case coupled with this affidavit satisfy Defendants' burden of showing a "legitimate managerial concern" and therefore that their decision was "not arbitrary or purposeless." Stevenson, 495 F.3d at 69.

With respect to procedural due process, "[p]rison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond." Id. at 70. A review of the circumstances of Plaintiff's placement in administrative segregation, as told in his own words, reveals that Plaintiff received both notice of the reasons for his transfer and an opportunity to respond to the allegations against him. Prison officials interviewed Plaintiff prior to placing him in administrative segregation regarding his involvement with Speedy. Plaintiff had the opportunity to dispute the allegations against him. Plaintiff's version was ultimately not accepted by prison officials, based on the content of the recorded phone calls and the materials found in his cell. While Plaintiff may dispute the propriety of the transfer, the undisputed facts demonstrate that he was not deprived of notice or an opportunity to respond to the allegations against him.

In the alternative, even if the Court were to find that Plaintiff's transfer to administrative segregation violated his due-process rights, the Court finds that the Defendants are entitled to qualified immunity. "Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kopec v. Tate, 361

F.3d 772, 776 (2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The defendant government official bears the burden of establishing the right to qualified immunity.  Id.  In determining the applicability of qualified immunity, courts must "ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation."  Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks and citation omitted).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Kelly, 622 F.3d at 254 (quoting Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)).

      The Court must examine the state of the law regarding pretrial detainees' due-process rights as of the time of the events in question -- February and March 2009.  At that time, district courts were directed to consider whether the "restrictive housing assignment [was] predicated on a legitimate managerial concern and therefore not arbitrary or purposeless."  Stevenson, 495 F.3d at 69.  Here, following an initial investigation, prison officials reasonably believed that Plaintiff posed a security risk to the general prison population.  Under these circumstances, the Court concludes that a reasonable prison official could not have understood that the transfer here violated Plaintiff's clearly established constitutional rights.  See Hope, 536 U.S. at 739.  Therefore, Defendants are entitled to qualified immunity.

### III.     CONCLUSION

For the reasons stated, and for good cause showing, the Court will grant the motions for summary judgment in their entirety.  The Court will issue an appropriate order and judgment.

                                                 s/ Mary L. Cooper          
                                              **MARY L. COOPER**
                                              United States District Judge

Dated: May 23, 2014